280 F.2d 631
 AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Appellant
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
Albuquerque Broadcasting Company, Westinghouse Broadcasting Company, Inc., Intervenors.
AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Petitioner
v.
UNITED STATES of America and Federal Communications Commission, Respondents,
Albuquerque Broadcasting Company, Westinghouse Broadcasting Company, Inc., Intervenors.
 No. 15399.
 No. 15400.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 1, 1960.
 Decided May 27, 1960.
 
 Mr. Vernon L. Wilkinson, Washington, D. C., with whom Mr. James A. McKenna, Jr., Washington, D. C., was on the brief, for appellant in No. 15399 and petitioner in No. 15400.
 Mr. Max D. Paglin, Asst. Gen. Counsel, Federal Communications Commission, with whom Mr. John L. FitzGerald, Gen. Counsel, Federal Communications Commission, Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, and Mr. Richard A. Solomon, Atty., Dept. of Justice, were on the brief for appellee in No. 15399 and respondents in No. 15400.
 Mr. Edward F. Kenehan, Washington, D. C., with whom Messrs. Frank U. Fletcher and Robert L. Heald, Washington, D. C., were on the brief, for intervenor Albuquerque Broadcasting Co.
 Mr. Walter H. Weiner, New York City, with whom Mr. George B. Turner, New York City, was on the brief, for intervenor Westinghouse Broadcasting Company, Inc.
 Before Mr. Justice REED, retired,* and BAZELON and WASHINGTON, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 This case presents a further aspect of the continuing controversy, with which we first dealt in 1951, as to the treatment accorded by the Federal Communications Commission to the conflicting claims of American Broadcasting Company (ABC) and Station KOB for radio broadcasting privileges on the frequency of 770 kilocycles. See American Broadcasting Co. v. Federal Communications Commission, 1951, 89 U.S.App.D.C. 298, 191 F.2d 492.
 
 
 2
 As to the cases now before us: No. 15,399 is an appeal from an order of the Federal Communications Commission dated September 5, 1958; No. 15,400 is a petition for review of the same order. The order in question — the substance of which will be described later on in this opinion — was entered in the Commission's Dockets 6584 and 6585, after lengthy hearings. Those dockets related to an application by Station KOB in Albuquerque, New Mexico, for a construction permit and regular radio broadcast license on the frequency of 770 kc, accompanied by a petition to "break down" that frequency as a Class I-A clear channel in order that two or more Class I stations could be licensed on it at night. Hearings in these dockets were begun in 1945 but were soon after discontinued and the dockets placed in a "pending" status, because of the initiation by the Commission of the so-called clear channel proceeding (Docket 6741). However, the Commission over a period of years authorized Station KOB to operate on 770 kc through the issuance of a series of Special Service Authorizations, each valid for six months. The matter was brought before this court in 1951 by American Broadcasting Company, which alleged that these Authorizations to KOB to operate on 770 kc infringed its rights as licensee of Station WJZ (now WA BC) in New York City, also operating on 770 kc. We held that further deprivation of WJZ's rights without a hearing could not be tolerated. We ordered the Commission to hold a hearing and reach a solution of the infringement problem without delay. At the same time, we recognized that the outcome of the clear channel proceedings might well "lead to very different conclusions regarding KOB than those which might be reached" in the proceedings which we directed the Commission to conduct. 89 U.S.App. D.C. at page 306, 191 F.2d at page 501.
 
 
 3
 Following our 1951 order various proceedings took place before the Commission. Finally the latter, on May 26, 1955, ordered that the record be brought up to date in Dockets 6584 and 6585, specifying additional matters for hearing. Later in the same year it concluded and ordered that KOB should continue on 770 kc until a hearing was held and a decision reached in those dockets. From that order the American Broadcasting Company took an appeal to this court, No. 12,883. After hearing that appeal, this court entered an order on September 27, 1956, reversing the Commission's order continuing KOB on 770 kc. We ordered the Commission to take effective steps within sixty days "substantially to relieve * * * illegal impingement upon the existing license of Station WABC, pending final determination of the use to be made of the frequency of 770 kilocycles either in the so-called clear channel proceedings or in the proceedings now being conducted pursuant to the Commission's order of May 26, 1955, in reference to the status of Station KOB." In response to this order the Commission directed KOB to install a directional antenna system to protect WABC's signal on frequency 770 kc. KOB has been operating in this fashion since April 26, 1957. ABC is satisfied with the arrangement, though KOB is not. Further hearings were held in Dockets 6584 and 6585, and in February of 1958 the Hearing Examiner issued his initial decision therein, contemplating amendment of Section 3.25 of the Commission's Rules to permit two Class I stations to operate on 770 kc, and contemplating also that both KOB and WABC would operate on that frequency, each employing a directional antenna designed to protect the other. The Commission's order of September 5, 1958, adopted these two recommendations.
 
 
 4
 In this court American Broadcasting urges chiefly that the proceedings in Dockets 6584 and 6585 were improperly transformed from proceedings designed to carry out this court's 1951 mandate to proceedings to find a permanent location for Station KOB. This contention is not persuasive. The Commission's action in November of 1956, pursuant to this court's second order, was satisfactory to ABC and adequately protected its interests for the time being. Additional proceedings were then conducted by the Commission without the compulsion of having to find a quick temporary solution as directed by this court in 1951 and 1956. These subsequent proceedings could properly seek a solution of a more permanent nature. We see no reason why the Commission could not do this in Dockets 6584 and 6585.[1] Be that as it may, we think it is too late to raise any doubt on that score in view of the language contained in our order of September 27, 1956, which in effect invited such action by the Commission. ABC did not seek reconsideration by this court of that order, and subsequent action of the Commission forcing KOB to erect a directional antenna was, as we have noted, satisfactory to ABC.
 
 
 5
 However, the question whether the conduct of the hearings in those two dockets was in any respect defective remains open for consideration. ABC alleges, first, that it sought to have the Commission consider the availability of five other frequencies which might be suitable for KOB, in addition to the frequencies of 770 kc and 1030 kc (the frequency originally assigned to KOB); these last, however, were the only two frequencies considered at the hearings. Second, it complains of the failure of the Commission to accept ABC's proffered evidence on various matters connected with its position as a network, and particularly the claim that to divide 770 kc with KOB would seriously affect the operations of WABC, the ABC network's "flagship" station, and would thus place the ABC network at a competitive disadvantage vis-à-vis the other two large networks, National Broadcasting and Columbia Broadcasting.
 
 
 6
 We think the first contention must fail, under the circumstances here. To convert the proceedings in Dockets 6584 and 6585 into a hearing on the possible availability of seven channels — rather than two — was no doubt within the Commission's discretionary authority. But, absent a showing of abuse of discretion, it was also within its authority to decline so to expand the scope of the hearing. The record shows that the Commission had considered other frequencies before narrowing the choice to 770 kc and 1030 kc. There was no frequency on the spectrum which was obviously and patently available for the sole use of either ABC or KOB: the problem of accommodating them could not be solved, on any broadcast frequency or frequencies, under the Commission's rules, without conflict with the claims of others, as well as between their own claims. Controversies of that sort were already under consideration in the clear channel proceedings, involving 22 channels. To consider seven channels in Dockets 6584 and 6585 would thus substantially overlap the clear channel proceeding. The consideration given to channel 1030 kc, as a possible alternative to 770 kc, indicates that WABC was not arbitrarily singled out as a victim to accommodate KOB. Under the circumstances, we find no abuse of discretion in the limitation to two channels.
 
 
 7
 ABC's second contention presents a more difficult problem. ABC claims that the proposed rule change, if implemented by appropriate licenses, would be contrary to the public interest in that network competition would be unduly restricted. In its decision of September 5, 1958, the Commission has in effect ruled that even if network competition would be adversely affected, it would not be in the public interest to delay further the rule change necessary to permit KOB to operate as a Class I station. Summarizing its findings of fact and conclusions, the Commission stated that "it is apparent * * * that only if KOB is restored to the status of a Class I-B station would it be enabled to provide a broadcast service even nearly adequate to fulfill the needs of the comparatively greatly underserved populations in the Southwest." The finding of engineering availability and local need was based on substantial evidence. It appears to us to be in furtherance of the policy of 47 U.S.C.A. § 307(b) that "In considering applications for licenses, and modifications and renewals thereof, when and insofar as there is demand for the same, the Commission shall make such distribution of licenses, frequencies, hours of operation, and of power among the several States and communities as to provide a fair, efficient and equitable distribution of radio service to each of the same." ABC does not contest the Commission's finding that KOB should be granted Class I-B status; nor does it assert that other frequencies, available under the present rules, could accommodate KOB, operating as a Class I station. Rather, ABC asserts that a frequency other than 770 kc should have been broken down in order to avoid an adverse impact on network competition. As we have said, we think that the Commission could under all the circumstances confine the hearing to consideration of two frequencies — 770 and 1030. And we cannot conclude on this record that the Commission erred in not assigning KOB to 1030 kc, occupied by Westing-house Broadcasting Company, Inc., an intervenor here and in the proceedings before the Commission.
 
 
 8
 At the same time, we do not think that the position of ABC as a network should be permanently prejudiced by forcing it to share a channel if other networks are given full use of clear channels. This inequity, if it exists or is permitted to exist, should be cognizable by the Commission in a proper proceeding brought before it by ABC, even though the assignment of KOB to 770 kc is permitted to continue. In other words, the Commission should seek to provide channel facilities to the ABC network on a basis which is fair and equitable in comparison with other networks. Whether this is to be done by permitting ABC to intervene in the clear channel proceedings now pending, or through some other means, is not for us to say. It may be that ABC can raise its claims in this regard by filing competitive applications when present licensees on other frequencies seek renewal or by seeking modification of existing licenses held by others. Perhaps the Commission will afford, sua sponte, some other procedural remedy. Thus, we do not believe that ABC has been or should be precluded from a hearing on its claim that the public interest requires that the loss of service in the East, which Class I broadcasting from Albuquerque produces, be absorbed by some eastern broadcaster other than WABC. Any failure by the Commission to give due consideration to ABC's claims for treatment comparable to that accorded to other networks, when raised in an appropriate manner, may be brought to the courts for review.
 
 
 9
 For these reasons, and on the basis stated, we affirm the Commission's order. We need not and do not pass on any contentions of the parties not here discussed.
 
 
 10
 So ordered.
 
 
 
 Notes:
 
 
 *
 Sitting by designation pursuant to Section 294(a), Title 28 U.S.Code
 
 
 [1]
 Appellant-petitioner also contends that since the stock of KOB was transferred in 1952 from T. M. Pepperday to Time, Incorporated, and Wayne Coy, and thereafter in 1957 to KSTP, Inc., it was an abuse of discretion for the Commission to permit further prosecution of the KOB application in Dockets 6584 and 6585. We disagree. This claim rests on a construction of the Commission's Rule 1.373(h), which provides:
 "An application will continue to be carried under the same file number unless a major amendment is made which involves the substitution of a different application. (Examples: Change in station location so that essentially a new service area is involved; substitution of new parties in the application so that the original applicant no longer holds a majority control.)" (Emphasis supplied.)
 ABC argues that since the file number on the KOB application should have been changed, the Commission should also have applied to KOB its general policy against considering new applications for breakdown of clear channels outside the clear channel docket. But ABC overlooks the fact that the proceedings in Dockets 6584 and 6585 have long been pursued as exceptions to the general method of handling applications for clear channel breakdowns. The technical requirement of Rule 1.373(h) does not demand abandonment of Dockets 6584 and 6585, particularly in view of the pressure which was placed on the Commission by the orders of this court, under the exceptional circumstances presented, and in view of the fact that the reason for processing the KOB application was not only to resolve the equities of the parties — including any alleged "grandfather" rights — but also to provide service to the Southwest emanating from Albuquerque, New Mexico. Nor is the policy of considering all proposed breakdowns of clear channels in one proceeding so unyielding as not to allow special proceedings to take care of such a special situation.