345 F.2d 954
 120 U.S.App.D.C. 264
 AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, Hubbard Broadcasting, Inc.,
Intervenor.
HUBBARD BROADCASTING, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, American
Broadcasting-ParamountTheatres, Inc., Intervenor.
AMERICAN BROADCASTING-PARAMOUNT THEATRES, INC., Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee, Hubbard
Broadcasting, Inc., Intervenor.
HUBBARD BROADCASTING, INC., Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents, American
Broadcasting-Paramount Theatres, Inc., Intervenor.
 Nos. 17567, 18045, 18046, 18078.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 14, 1964.
Decided Feb. 25, 1965.
 
 Mr. Vernon L. Wilkinson, Washington, D.C., with whom Mr. James A. McKenna, Jr., Washington, D.C., was on the brief, for American Broadcasting-Paramount Theatres, Inc., petitioner in No. 17,567, appellant in No. 18,046, and intervenor in Nos. 18,045 and 18,078.
 Mr. Frank U. Fletcher, Washington, D.C., with whom Messrs. Robert L. Heald and Edward F. Kenehan, Washington, D.C., were on the brief, for Hubbard Broadcasting, Inc., appellant in No. 18,045, petitioner in No. 18,078, and intervenor in Nos. 17,567 and 18,046.
 Mrs. Ruth V. Reel, Counsel, F.C.C., with whom Asst. Atty. Gen., William H. Orrick, Jr., and Max D. Paglin, Gen. Counsel at the time brief was filed, and Daniel R. Ohlbaum, Deputy Gen. Counsel, Michael Finkelstein, Counsel, F.C.C., and Lionel Kestenbaum, Atty. Dept. of Justice, were on the brief, for appellees-respondents. Mr. Herman I. Branse, Counsel, F.C.C., also entered an appearance for respondents in No. 17,567.
 Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WASHINGTON, Circuit Judge.
 WASHINGTON, Circuit Judge:
 
 
 1
 The present controversy has been before us in various aspects for many years. In March, 1941, WJZ (now WABC, the flagship radio station in New York City of the American Broadcasting Company) was shifted from a frequency of 760 kc (which it had held on a clear channel exclusive basis since 1928), and was licensed to operate on 770 kc on an exclusive basis as a Class I-A (clear channel) station with 50 kw power day and night.[1] In October, 1941, however, KOB, a radio station at Albuquerque, New Mexico, was given a temporary SSA (special service authorization) to operate on that same frequency at 50 kw day and 25 kw night with no directional antenna.[2] Substantial interference with WABC's broadcasts resulted. Upon appeal from the Commission's order, we held in 1951, see 89 U.S.App.D.C. 298, 191 F.2d 492, that the rights of ABC to operate on frequency 770 kc on a clear channel basis had been infringed.
 
 
 2
 The case came back to us in 1956 on a complaint by ABC that the illegal infringement was continuing. We ordered the Commission to take prompt and effective steps to relieve the illegal impingement upon WABC's license, until a decision was made in the then pending clear channel proceedings or in proceedings to determine the permanent status of KOB.[3] Following our order, the Commission instructed KOB in 1957 to directionalize its nighttime operation on 770 kc to protect ABC's nondirectional 0.5 mv/m 50% Skywave contour. The effect of this was to treat KOB as a Class II station on channel 770 kc. That resolution of the controversy was satisfactory to ABC and remains so today.
 
 
 3
 In 1958, however, the Commission by order entered in the KOB proceedings divided operations on channel 770 kc, making both WABC and KOB Class I-B stations on that channel and directing both WABC and KOB to set up directional antennas so as to protect the other station from interference within specified limits. See 25 F.C.C. 683. We affirmed this order of the Commission in 108 U.S.App.D.C. 83, 280 F.2d 631 (1960), but indicated that ABC should not permanently be forced to share a channel in this manner unless the other networks were comparably treated. We used the following language:
 
 
 4
 'At the same time, we do not think that the position of ABC as a network should be permanently prejudiced by forcing it to share a channel if other networks are given full use of clear channels. This inequity, if it exists or is permitted to exist, should be cognizable by the Commission in a proper proceeding brought before it by ABC, even though the assignment of KOB to 770 kc is permitted to continue. In other words, the Commission should seek to provide channel facilities to the ABC network on a basis which is fair and equitable in comparison with other networks. Whether this is to be done by permitting ABC to intervene in the clear channel proceedings now pending, or through some other means, is not for us to say. It may be that ABC can raise its claims in this regard by filing competitive applications when present licensees on other frequencies seek renewal or by seeking modification of existing licenses held by others. Perhaps the Commission will afford, sua sponte, some other procedural remedy. Thus, we do not believe that ABC has been or should be precluded from a hearing on its claim that the public interest requires that the loss of service in the East, which Class I broadcasting from Albuquerque produces, be absorbed by some eastern broadcaster other than WABC. Any failure by the Commission to give due consideration to ABC's claims for treatment comparable to that accorded to other networks, when raised in an appropriate manner, may be brought to the courts for review.
 
 
 5
 'For these reasons, and on the basis stated, we affirm the Commission's order. We need not and do not pass on any contentions of the parties not here discussed.' Supra at 87-88, 280 F.2d at 635-636.
 
 
 6
 At the time we said this, the clear channel proceedings were still under consideration and our decision was rendered on the premise, as we stated, that when these proceedings were concluded WABC would receive channel facilities on a basis which was fair and equitable as compared to the channel facilities given to other networks.[4]
 
 
 7
 A few months later, on September 14, 1961, the Commission issued its Report and Order in the clear channel proceedings. 31 F.C.C. 565. In that Report and Order the Columbia Broadcasting System's flagship station in New York City, WCBS, licensed to operate as a Class I-A station on Channel 880 kc, was classed with twelve other Class I-A stations operating on one of the 25 clear channels. To each of the channels of this group, including the CBS station, the Commission authorized the assignment of a new duplicating Class II-A station in another part of the United States, with the proviso that the new station directionalize its antenna so as to protect the 0.5 mv/m nighttime 50% Skywave contour of the Class I-A dominant station, which was not required to directionalize. The National Broadcasting Company's flagship station in New York City, WNBC, was licensed to operate on Channel 660 kc as a Class I-A station. The Commission previously had assigned to this channel a Class II station in Alaska, which did not impinge on the 0.5 mv/m nighttime 50% Skywave contour of the NBC station. No new duplicating station was assigned to this channel and WNBC was not required to directionalize.
 
 
 8
 The ABC flagship station received, however, very different treatment from that accorded the CBS and NBC stations. It remained classified as a I-B station; it was required to share its channel with another Class I-B station; it was required to directionalize to protect that station; and its 0.5 mv/m nighttime 50% Skywave contour was not protected.[5]
 
 
 9
 A petition for review of the Commission's order in the clear channel proceeding (our No. 17567) was filed with this court by ABC and has been held in abeyance by us until the present time. During this period ABC was given a hearing by the Commission on its claim that forcing WABC as a Class I-B station to share its channel with another Class I-B station and to directionalize its operation in New York would be to treat it inequitably in comparison with the other networks. The Commission concluded that ABC did not successfully bear the burden of proving that its competitive position as a network was prejudiced by the inferior treatment given to its flagship facility. ABC has also taken an appeal to us (our No. 18,046) from the Commission's order denying its application for renewal of its license on an undirectionalized basis.
 
 
 10
 In our Nos. 18,045 and 18,078, Hubbard Broadcasting Company, the present owner of KOB, has also appealed from and petitioned for review of the Commission's order deferring action on an application filed by Hubbard for the use of 770 kc in New York City on the terms established by the Commission in its 1958 order. If Hubbard's prayers are granted, this would oust WABC, which has so far failed to apply for renewal of its license (now expired) on other than a clear channel basis. (The Commission gave ABC an opportunity to apply for a renewal of its license as limited by the 1958 order, but ABC declined to do so. It has endeavored to apply on a basis not so limited.) Hubbard claims that its application for this frequency (770 kc) in New York City is the only one which complies with the Commission's 1958 order and hence that it is automatically entitled to receive the requested license. In the alternative, it argues that if a comparative hearing is necessary it should be given one immediately, along with WABC.
 
 I.
 
 11
 The end result of the Commission's decisions in the clear channel proceedings and the later hearing on prejudice is that channel 770 kc is the only one of the 25 clear channels which does not have on it a Class I-A station, and WABC is the only Class I-A station to be demoted to a lower grade. As compared with the other network flagship stations, WABC alone was put in a lower grade, it alone was required to share its channel with another station of equal rank, it alone was required to directionalize, and it alone is not protected up to its existing 0.5 mv/m nighttime 50% Skywave contour. No one disputes, and the Commission found, that on the basis of operations at the time of the Commission's decision, the three network flagship stations had each provided a substantially equivalent primary and secondary radio service for approximately the same number of persons (over 42,000,000) in the same areas of the country; that under the Commission's decision the coverage of the NBC and CBS stations will be relatively unaffected; that under that decision the primary night service coverage of the ABC station will be reduced to the extent of 3680 square miles and some 702,326 persons; and that it will lose secondary night service coverage of 60% Of its former area and 69%, or 17,213,848, of the persons it served. We are told, and this also has not been disputed, that the ABC channel with a second Class I-B station on it will be the only one of the 25 clear channels that will be ineligible for higher power, when and if the Commission authorizes it. Cf. our opinion in Goodwill Stations, Inc. v. Federal Communications Commission, 117 U.S.App.D.C. 64, 325 F.2d 637 (1963). We are also told that the requirement for directionalization of WABC may result in its having to move its operations to a new site because of air-hazard considerations (see 25 F.C.C. 740-41) with the consequence that it may have to incur substantial capital expenditures.
 
 
 12
 The inequity in the treatment of the ABC flagship station is self-apparent. It shows in the substantial loss of coverage in both primary and secondary service which concededly it alone will sustain; in the capital expenditures it alone may be forced to make; and in the ineligibility for higher power in the future which it alone will suffer. The NBC and CBS stations emerged in the exact position in which the ABC station had been, following our 1956 order to the Commission, supra n. 3, until the decision in the clear channel proceeding. ABC seeks no more here than to be returned to that category.
 
 
 13
 The Commission's special hearing relative to the issue of prejudice was by its order directed only to the question of whether the admitted difference in treatment of the ABC station, resulting in 'a significant loss of secondary and primary service through directionalizing its nighttime operation to protect that of KOB', * * * 'will adversely affect the competitive position of the ABC radio network and, if so, whether such fact would require the alteration' of the result of the 1958 decision, requiring directionalization of WABC. That approach resulted in Commission findings and conclusions that ABC had failed to carry its burden of proving that its competitive position over the country as a whole will be adversely affected by the Commission's 1958 decision requiring it to directionalize to protect KOB.[6] We need not decide whether this conclusion is warranted, because it is not within the scope of our 1960 opinion, which indicated that comparable channel facilities should be provided for all the networks.[7]
 
 
 14
 It remains only to consider whether the Commission in any of its decisions has given adequate public interest reasons to justify the inequitable position given the ABC flagship station as compared with the flagship stations of other networks-- and indeed with all other clear channel stations.
 
 II.
 
 15
 We have searched the Report and Order in the clear channel proceeding for adequate reasons given by the Commission which might explain and justify this treatment from the public interest standpoint. The Commission first said that, following critical comments from the industry, it had eliminated the requirement of directionalization by all the existing Class I stations, except that on 770 kc (the ABC station), but stated that this approach as to all other existing Class I-A stations 'does not alter the validity of our conclusion (in the 1958 KOB decision) that in case of one particular I-A channel-- 770 kc-- directionalization of the existing Class I station so as to afford mutual protection to a similar operation in New Mexico would best serve the public interest. We note herein the special circumstances pertaining to that channel.' See 31 F.C.C. at 574, n. 4. Later in the Report the Commission took note of our 1960 decision, and stated that, because further hearings will be needed as a result thereof, it 'is not appropriate here to determine finally the exact form of operations which will be permitted on the channel 770 kc.' The Commission however stated certain conclusions as to the problem: that 'the public interest requires the establishment of a major unlimited time facility in New Mexico'; that KOB in that area 'had once had Class I service and was deprived of it because of the reallocations required in 1941' by treaty; that the 'frequency 770 kc is the one most suitable and appropriate for such operation by KOB,' and that the frequency 1030 kc is no longer involved and other frequencies cannot be considered. The Commission concluded by noting that 'whatever disposition is finally made as to operation on 770 kc,' it affirmed the determination that 'a major unlimited time facility should be assigned to New Mexico on 770 kc' and that the rules should be amended 'to permit (not authorize) the assignment of two Class I stations on that frequency.'
 
 
 16
 We consider first the Commission's conclusion that the public interest requires the establishment of a major unlimited time facility, i.e., a Class I-B station, on 770 kc in New Mexico. In its 1958 order in the KOB proceeding, which we affirmed in 1960 in 108 U.S.App.D.C. 83, 280 F.2d 631, the Commission had found that KOB should be awarded a Class I-B facility in order that it might serve the needs of the Albuquerque area adequately. As we pointed out in affirming, however, ABC did not at that time contest this finding (108 U.S.App.D.C. at 87, 280 F.2d at 635), and our affirmance was based on the situation as it existed in 1958. Furthermore-- as we have already pointed out-- it was conditioned on the premise that WABC would be awarded in the clear channel proceeding (or otherwise) channel facilities on a fair and equitable basis in comparison with other networks. In any case, the Commission's 1958 finding is now seven years old. It is distinctly possible that the needs of the Southwest would now be adequately served by KOB operating as a Class II station. In the 1961 clear channel decision the Commission allocated a new Class II facility to New Mexico, one to Colorado, and one to Utah, as well as eight more new Class II stations and other new station facilities for the western areas of the United States. Although in that decision the Commission restated its view that KOB should operate as a Class I-B station, it seems clear that the Commission did not make a fresh assessment of the needs of the Albuquerque area in respect of KOB in the light of the increased service then being made available, and other changed conditions.[8] We find nothing which amounts to an adequate reason for not reconsidering the old finding on the basis of the current public interest.
 
 
 17
 We have noted nothing else in the report which constitutes any sort of support for the conclusion that the status of KOB must be that of a Class I-B station rather than the Class II status given to the duplicating stations assigned to the frequencies 660 kc and 880 kc used by the other networks-- and to all the other duplicating stations on clear channels. The circumstance that KOB had, prior to 1941, a Class I-A status is hardly persuasive when it has had only a Class II status since that time, and when WABC has always had that status and has up to the time of the 1958 decision been licensed to operate as a Class I-A station on an exclusive clear channel basis on 770 kc, the channel in question. And the statement that it is in the public interest for the ABC station to directionalize to protect KOB is meaningless in relation to the issue of equivalent channel facilities where the duplicating stations assigned to the channels of other networks were Class II stations needing no directionalization for protection from the dominant Class I-A NBC and CBS stations. The Commission is wholly silent as to why an equivalent Class II status for KOB would not serve the public interest, as well as help to equalize channel facilities among the networks, particularly when the Commission has seemingly failed to consider the augmented services to be provided in the western areas of the United States as a result of the clear channel decision.[9]
 
 
 18
 In view of the prejudice to ABC in the Commission's current solution, the Commission should make a new assessment of the public interest needs in the Southwest. If the Commission concludes that a Class II station would adequately meet the needs of the Albuquerque area, that would appear to solve the ABC problem. The 770 kc channel would then be accorded treatment similar to the other clear channels that were broken down; and ABC's flagship station would be returned to a status comparable to that of the other networks' flagship stations.
 
 
 19
 In 1960 we sustained the Commission's 1958 decision to limit its consideration to two frequencies, 770 kc and 1030 kc, and its decision that 770 kc was the more suitable frequency for KOB's operation, but we did this on the limited basis already noted. We also stated that
 
 
 20
 'we do not believe that ABC has been or should be precluded from a hearing on its claim that the public interest requires that the loss of service in the East, which Class I broadcasting from Albuquerque produces, be absorbed by some eastern broadcaster other than WABC.' 108 U.S.App.D.C. at 88, 280 F.2d at 636.
 
 
 21
 In view of the Commission's decision in the clear channel case resulting in a Class I-A undirectionalized status for the CBS and NBC flagship stations, the ABC station should have the opportunity for a hearing as to whether one or more of the other clear channels should accommodate two Class I-B stations, to the end that comparatively equal channel facilities may be provided for the flagship stations of the three networks in the manner most favorable to the public interest.
 
 
 22
 The history of this dispute does not reflect credit on the Commission. Its response to this court's orders has not in final result been to alleviate in any substantial sense the very real grievances which we consider ABC to have suffered over the years. But, as we said in this case in 1951: 'We recognize that the Commission's task is most difficult'-- 'often presenting situations well-nigh impossible of solution.' We cannot 'determine the ultimate disposition which should be made of' this controversy or 'direct the Commission how to exercise its discretionary powers.' 89 U.S.App.D.C. at 306, 307, 191 F.2d at 500, 501. We recognize also that it is not our function to decide what is in the public interest. But we can state that compelling public interest reasons must be given for not giving equitable channel treatment to WABC. We do not find those reasons here. We think that, as the matter now stands, ABC has not received equitable channel treatment on a comparative basis, taking into account the situation in its current aspect. Accordingly, in Nos. 17,567 and 18,046 we remand the matter to the Commission for further proceedings. In exercising its functions on remand the Commission of course will be free to consider all relevant current data, whether or not we have referred to them in this opinion.
 
 
 23
 As for Hubbard's application for a station on channel 770 kc in New York City (our Nos. 18,045 and 18,078), we think that the Commission's disposition (essentially to hold the application in abeyance) was appropriate and within its discretion. The nature of the facility to be made available to any licensee on 770 kc in New York and the treatment to be accorded ABC's flagship station could properly be regarded as a matter to be finally disposed of before a decision on Hubbard's application was made. The Commission may in its discretion put off consideration of Hubbard's application further, until it has acted pursuant to this decision.
 
 
 24
 These cases are remanded for further proceedings not inconsistent with this opinion.
 
 
 25
 So ordered.
 
 
 
 [1]
 This shift was made necessary by the new North American Regional Broadcasting treaty which withdrew from United States use the 760 kc frequency on which WJZ had been operating. The channel on which KOB, a station at Albuquerque, New Mexico, was licensed to operate, 1180 kc, was also withdrawn from United States use by the treaty, and KOB was licensed in March, 1941, to operate on the frequency of 1030 kc, with 10 kw power, unlimited time
 Frequent reference will be made herein to the American Broadcasting Company ('ABC') and its flagship station WABC; as well as to the Columbia Broadcasting System ('CBS') and its flagship station WCBS; also to the National Broadcasting Company ('NBC') and its flagship station WNBC. For a description of the characteristics of I-A, I-B, II-A and other station classifications, see 89 U.S.App.D.C. at 300 n. 1, 191 F.2d at 494 n. 1.
 
 
 [2]
 This temporary authority to KOB was continued thereafter regularly through a series of SSAs each valid for six months, even though KOB continued to hold its license to operate on the 1030 kc channel (see fn. 1)
 
 
 [3]
 Our order stated, inter alia, that 'The proceedings taken by the Commission do not appear to us to have been either prompt or adequate.' See 14 Pike & Fischer RR 2020
 
 
 [4]
 The Further Notice in the clear channel proceeding released on April 15, 1958, proposed to place new duplicating Class I stations in Montana and Wyoming on channels 660 kc and 880 kc, and to require the dominant NBC and CBS New York stations on those channels to directionalize. The KOB decision adopted on September 3, 1958 (and affirmed by us in 1960 in the language quoted above), was consistent with this approach and treated the ABC station in New York in the same way proposed for the NBC and CBS stations. The Third Notice in the clear channel proceeding, 24 FED. REG. 7737 (1959), released on September 22, 1959, proposed, however, to place only a duplicating Class II station on channels 660 kc and 880 kc, occupied by NBC and CBS as Class I-A stations. It was not known by us in 1960 what decision as to the NBC and CBS channels the Commission would ultimately reach in the clear channel proceeding and the language in our opinion, quoted above, was used by us in that background
 
 
 [5]
 The ultimate status of ABC's channel, along with that of NBC's WNBC and of ten other Class I-A stations (to which no duplicating station had been assigned), was reserved for future determination. WABC has not complied with the Commission's 1958 order and continues to operate on a non-directionalized basis on 770 kc from New York
 
 
 [6]
 KOB is a station affiliated with the NBC network
 
 
 [7]
 The Commission's conclusions in the KOB proceedings were before us in 1960, as were its notices and orders up to that time in the clear channel proceeding. Our affirmance of the KOB decision was conditioned, as heretofore noted, on the premise that in the end fair and equitable channel facilities would be given ABC in comparison with other networks
 
 
 [8]
 For example, the Commission explained its 1958 decision in part by noting that KOB operating as a Class I-B station 'can provide a nighttime primary service to 156,275 persons who lack any such service from other stations as compared to only 37,483 persons who would be so benefited if KOB should operate as a Class II station protecting WABC,' and that it also can provide some secondary service, including service to areas having no nighttime primary service. These figures however were cited as coming from the 1958 decision
 
 
 [9]
 We have already referred, supra, to the Commission's decision on the fair treatment question. That decision advances no reasons, other than those given in the 1958 decision, to sustain the unique treatment given to ABC alone, and undertakes no reassessment of the WABC-KOB matter on the basis of current conditions